**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANDREW FOGARTY<br>　*Plaintiff*,<br><br>　　　　　v.<br><br>SIKORSKY AIRCRAFT<br>CORPORATION<br>　*Defendant*. | <br><br><br><br><br><br>February 1, 2026 |

## COMPLAINT

### INTRODUCTION

　　1.　　Plaintiff Andrew Fogarty, an aircraft mechanic with over sixteen years of service at Sikorsky Aircraft Corporation, brings this action to redress a campaign of disability-based harassment, sabotage, and retaliation that destroyed his career. Despite knowing of Plaintiff's bipolar disorder—having previously accommodated a medical leave in 2023—Defendant allowed a severe hostile work environment to fester, where supervisors and coworkers sabotaged Plaintiff's tools, hid critical aircraft parts, and openly mocked his mental state. This unchecked harassment precipitated a visible six-month mental decline in 2024, during which Plaintiff exhibited clear signs of distress, including fleeing the workplace in fear. Instead of intervening or offering accommodations as required by the Rehabilitation Act of 1973, Defendant watched Plaintiff deteriorate until he suffered a catastrophic breakdown. Defendant then seized upon this crisis to terminate Plaintiff for "attendance" on December 30, 2024—a pretextual firing timed just 48 hours before his annual vacation benefits were set to vest, in bad faith and in violation of his rights under federal and state law.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 794 (Rehabilitation Act), and 29 U.S.C. §2601 (Family and Medical Leave Act).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in Stratford, Connecticut.

## PARTIES

5. Plaintiff, Andrew Fogarty, is an individual residing at 1015 Roosevelt Drive, Derby, Connecticut. He is a qualified individual with a disability within the meaning of the Rehabilitation Act.

6. Defendant, Sikorsky Aircraft Corporation, is a corporation with a principal place of business at 6900 Main Street, Stratford, Connecticut.

7. At all times relevant hereto, Defendant was a recipient of federal financial assistance, including but not limited to federal defense contracts and funding for aircraft manufacturing.

**FACTS**

A. **Employment and Disability**

8. Plaintiff was employed by Defendant for over sixteen years, from September 8, 2008, until December 30, 2024.

9. Plaintiff held the position of aircraft mechanic (Structure/Assembly), earning approximately $65.00 per hour plus a differential.

10. At all times relevant to his termination in 2024, Plaintiff was an eligible employee under the FMLA (29 U.S.C. §2611(2)). He had been employed by Defendant for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of his medical crisis in December 2024.

11. Plaintiff suffers from bipolar disorder, a mental health condition that substantially impairs behavioral regulation and impacts major life activities.

12. Defendant had actual knowledge of Plaintiff's disability. In 2023, following an incident by which Plaintiff's mental condition caused him to damage a piece of equipment, Defendant's Human Resources department facilitated a medical leave of absence for Plaintiff to attend an outpatient program at Griffin Hospital from July 7, 2023, to August 3, 2023.

13. At all times relevant hereto, the terms and conditions of Plaintiff's employment were governed by a Collective Bargaining Agreement (CBA) between Defendant and Teamsters Local 1150.

14. Pursuant to Article 9 of the CBA, employees accrue vacation pay and entitlements which vest annual on January 1st.

**B. The Hostile Work Environment and Sabotage (2022–2024)**

15. Beginning in approximately 2022 and continuing through 2024, Plaintiff was subjected to severe harassment and sabotage by coworkers and supervisors.

16. This harassment was frequent, occurring approximately 2 to 4 times per week.

17. The harassment involved the coordinated sabotage of Plaintiff's work on aircraft, creating a safety risk. Specific acts included:

   a. Hiding Plaintiff's tools and tooling details required for assembly;

   b. Locking away necessary parts to prevent Plaintiff from completing assignments;

   c. Turning off equipment required for Plaintiff's duties; and

   d. Moving Plaintiff's toolbox and assigning him to jobs that could not be completed to set him up for failure.

18. Plaintiff was also subjected to verbal abuse and humiliation related to his mental state:

   a. Coworker Nate Dwyer spread rumors to the day shift that Plaintiff was a "psychopath" and "losing his mind;"

   b. Day Shift Manager Billy O'Connell commented that he "wanted the old Andy back," referencing Plaintiff's pre-disability demeanor; and

    c. Derogatory flyers about Plaintiff were posted on workplace walls.

19. Supervisors Joe Masonti and Jim Wilson witnessed these events but failed to intervene. Instead, management moved Plaintiff between various shifts, isolating him further.

### C. The Six-Month Decline and Failure to Accommodate (June–Dec 2024)

20. Due to the unchecked hostile environment, Plaintiff suffered a visible mental decline from June 2024 to December 2024.

21. This decline was obvious to management. Witnesses Randy Duetetre and Espoir Iramva observed that management watched Plaintiff's decline for six months and failed to act or address the situation.

22. On or about July 20, 2024, Plaintiff fled work while clocked in due to fear for his life, leaving behind his toolbox and personal effects, which had to be secured by a coworker.

23. On or about August 10, 2024, Plaintiff expressed suicidal ideation and paranoia to coworker Randy Duetetre.

24. Despite these clear manifestations of a disability-related crisis, Defendant failed to engage in the interactive process or offer reasonable accommodations (such as EAP referral or leave), as they had done previously in 2023.

### D. The Termination

25. On December 6, 2024, Plaintiff suffered a severe psychiatric break resulting in his arrest and hospitalization/incarceration.

26.     On December 30, 2024, while Plaintiff was still detained/hospitalized, Defendant terminated his employment.

27.     The stated reason for termination was "attendance," specifically alleging job abandonment.

28.     This reason was pretextual:

   a.    First, Plaintiff's absence was due to a medical crisis resulting in incarceration/hospitalization, of which Defendant was aware;

   b.    Second, Defendant terminated Plaintiff on December 30, 2024, fewer than 30 days after his absence began;

   c.    Third, this date was selected strategically to precede the January 1, 2025 vesting date for vacation benefits, thereby unlawfully depriving Plaintiff of earned wages.

29.     Defendant ignored available alternatives to termination. Specifically, Defendant had the discretion to authorize an unpaid leave of absence for "illness or other valid reasons" for an initial period of ninety (90) days, which may be extended. Despite knowing of Plaintiff's medical crisis, Defendant refused to utilize this provision, choosing instead to terminate him to avoid benefit vesting.

30.     Furthermore, upon information and belief, the Collective Bargaining Agreement (CBA) governing Plaintiff's employment contains provisions allowing for unpaid leaves of absence for medical reasons for up to one year. By terminating Plaintiff immediately, Defendant bypassed these contractual allowances in bad faith.

6

## FIRST COUNT
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE REHABILITATION ACT (29 U.S.C. § 794)

31. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

32. Plaintiff was subjected to continuous harassment based on his disability and perceived impairment.

33. The harassment, including physical sabotage of work and public humiliation, was sufficiently severe and pervasive to alter the conditions of employment and create an abusive environment.

34. Defendant knew of the harassment through its supervisors (Masonti and Wilson) but failed to take prompt and effective remedial action.

35. As a result, Plaintiff suffered severe emotional distress and a worsening of his medical condition.

## SECOND COUNT
## FAILURE TO ACCOMODATE IN VIOLATION OF THE REHABILITATION ACT (29 U.S.C. § 794)

33. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

34. Defendant knew of Plaintiff's disability and observed his visible decline and inability to perform essential functions without support in late 2024.

35. Defendant failed to engage in the interactive process or provide reasonable accommodations (such as medical leave or EAP re-enrollment) that would have enabled Plaintiff to remain employed.

36. This failure to accommodate directly contributed to Plaintiff's mental health crisis and subsequent termination.

## THIRD COUNT
## DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT (29 U.S.C. § 794)

37. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

38. Plaintiff was qualified for his position as an aircraft mechanic.

39. Defendant terminated Plaintiff solely by reason of his disability and/or conduct that was a manifestation of his disability.

40. The proffered reason for termination ("attendance") is pretextual.

41. Evidence of this pretext includes Defendant's deviation from standard progressive discipline procedures outlined in the CBA and the suspicious timing of the termination merely 48 hours before Plaintiff's vacation benefits were set to vest under Article 9 of the labor contract.

## FOURTH COUNT
## RETALIATION (Conn. Gen. Stat. § 31-51q) (Supplemental Jurisdiction)

41. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

42. Plaintiff engaged in protected speech under the First Amendment and the Connecticut Constitution by reporting matters of public concern: specifically, the safety risks posed by the sabotage of aircraft parts and tooling.

43. Ensuring the safe assembly of aircraft is a matter of paramount public concern.

44. Defendant retaliated against Plaintiff for these reports by subjecting him to a hostile work environment and terminating his employment.

## FITH COUNT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Supplemental Jurisdiction)

45. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

46. The concerted sabotage of an aircraft mechanic's tools and workspace creates a high-stakes, danger-filled environment that is extreme and outrageous.

47. Defendant's agents knew Plaintiff was disabled and susceptible to stress, yet intentionally persisted in this conduct, causing Plaintiff's catastrophic mental breakdown.

## SIXTH COUNT
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (Supplemental Jurisdiction)

48. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

49. Defendant engaged in unreasonable conduct during the termination process by firing Plaintiff for "attendance" while he was known to be involuntarily detained/hospitalized and by rushing the termination to deny benefits.

## SEVENTH COUNT
## WRONGFUL WITHOLDING OF WAGES (Conn. Gen. Stat. § 31-72) (Supplemental Jurisdiction)

50. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully set forth herein.

51. Pursuant to the Collective Bargaining Agreement, Plaintiff had accrued vacation pay and benefits for the 2024 calendar year, which were legally scheduled to vest and become payable on January 1, 2025.

52. Defendant acted in bad faith by processing Plaintiff's termination on December 30, 2024, solely to avoid this contractual obligation.

53. Plaintiff seeks double damages for this bad faith withholding.

## EIGHT COUNT
## FMLA INTERFERENCE AND RETALIATION (29 U.S.C. §2615)

54. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully stated herein.

55. At all times relevant, Plaintiff was an eligible employee and Defendant was a covered employer as defined by the FMLA.

56. Plaintiff suffered from a serious health condition (bipolar disorder requiring inpatient hospitalization) that rendered him unable to perform the functions of his position.

57. Defendant was aware of Plaintiff's hospitalization and need for medical leave beginning on or about December 6, 2024.

58. Instead of granting Plaintiff the FMLA leave to which he was entitled, or providing him notice of his eligibility, Defendant interfered with Plaintiff's rights by terminating his employment on December 30, 2024.

59. This termination constituted both unlawful interference with the exercise of FMLA rights and retaliation of his need to take medical leave.

60. As a direct result, Plaintiff has suffered lost wages, benefits, and other compensation.

## NINTH COUNT
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Supplemental Jurisdiction)

61. Plaintiff repeats and realleges Paragraphs 1 through 31 as if fully stated herein.

62. At all times relevant, an implied covenant of good faith and fair dealing existed in the employment relationship between Plaintiff and Defendant, derived from the CBA and Connecticut common law.

63. Pursuant to Article 16, Section 2 of the CBA, Defendant had the discretion to grant Plaintiff an unpaid leave of absence for up to ninety (90) days, which could be extended, to accommodate his medical crisis.

64. Instead, Defendant violated this covenant by terminating Plaintiff's employment on December 30, 2024, exactly 48 hours before his accrued vacation benefits were set to vest on January 1, 2025, under Article 9 of the CBA.

65. Defendant's termination decision was not driven by legitimate business reasons, but was made in bad faith with the specific intent to deprive Plaintiff of the agreed-upon benefits of his labor.

66. This bad faith conduct violates the public policy against wage theft and the fair administration of employment contracts.

67. As a result of this breach, Plaintiff has suffered economic damages in the form of lost vacation pay and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. A jury trial on all triable issues;

B. Declare that the acts and practices complained of herein are in violation of the Rehabilitation Act of 1973;

C. Award Plaintiff back pay, front pay, and the value of lost benefits, including all damages available under 29 U.S.C. §2617(a)(1);

D. Award Plaintiff compensatory damages for emotional distress, pain, and suffering;

E. Award punitive damages (as permitted under state tort claims);

F. Award double damages for unpaid wages pursuant to Conn. Gen. Stat. § 31-72;

G. Award reasonable attorney's fees and costs under 42 U.S.C. §1988;

H. Award liquidated damages equal to the amount of lost wages and interest pursuant to the FMLA;

I. Pre- and post-judgment interest; and

J.   Such other and further relief as this Court deems just and proper.

Respectfully submitted,

ANDREW FOGARTY, *Plaintiff*

*/s/Alexander T. Taubes*
Alexander T. Taubes ct30100
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com

*Attorney for Plaintiff*
